# AFFIDAVIT OF LISA A. CHRISTY IN SUPPORT OF CRIMINAL COMPLAINT

## I. AFFIANT AND EXPERTISE

1. I, Special Agent Lisa A. Christy, am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been a sworn member of ATF since April 2009. I am currently assigned to the Baltimore Field Division, High Intensity Drug Trafficking Area (HITDA), Group II.

3. As a Special Agent with ATF, I have successfully completed the Basic Criminal Investigator Training Course at the Federal Law Enforcement Training Center in Brunswick, Georgia, as well as the Special Agent Basic Training Course at the ATF National Academy in Glynco, Georgia. I have received extensive training, both formal and on-the-job, in the provisions of the federal firearms laws administered under Title 18 and Title 26 of the United States Code. I have participated in the investigation, arrest, and prosecution of individuals for violations of federal firearms, racketeering, and narcotics trafficking laws. I have also participated in the execution of search and seizure warrants for illegal activity involving firearms, narcotics, and violent crimes.

4. I submit this affidavit in support of an application for a criminal complaint against the following individual:

a. **Gerald Thomas JOHNSON**, African-American male, 6' 6'', 320, brown eyes. JOHNSON's last known address is 736 N. Linwood Ave., Baltimore, MD, 21205.



## II.     PROBABLE CAUSE

5.     In my capacity as a Special Agent with ATF, I am participating in an investigation of narcotics trafficking, violent crime, and other racketeering activity in the area of Greenmount Cemetery in East Baltimore. As part of that investigation, on June 30, 2016, I participated in an interview of a confidential source (hereinafter CS-1), who voluntarily agreed, without any inducements, to provide information to law enforcement. During the interview, CS-1 stated that s/he recently observed JOHNSON and others removing multiple firearms from a gold-colored Cadillac near the intersection of Greenmount Ave. and North Ave. CS-1 further stated that s/he has personally observed JOHNSON driving the gold-colored Cadillac. At the time of this interview, I was aware, on the basis of my participation in prior investigations, that JOHNSON's driver's license is suspended.

6. Following the June 30 interview with CS-1, I learned that a registered confidential informant (hereinafter CI-1) had provided similar information to officers of the Baltimore Police Department. Specifically, CI-1 stated that s/he has observed JOHNSON carrying a firearm in his "dip," or waistband, area, while in close proximity to a gold-colored Cadillac. CI-1 has provided reliable information, which has led to the seizure of firearms and narcotics, in the past. S/he began cooperating with law enforcement in the hope of receiving a lesser sentence for pending charges. At this point in time, CI-1 is providing information in exchange for monetary compensation from BPD.

7. On the basis of the information provided by CS-1 and CI-1, as well as my own personal knowledge that JOHNSON's driver's license is suspended, I contacted members of the Baltimore Police Department and requested that they be on the lookout for a gold-colored Cadillac driven by JOHNSON in the area of Greenmount Ave. and North Ave.

8. At approximately 4:55 p.m. on June 30, 2016, Baltimore Police Detectives Kevin Fassl and Timothy Romeo, accompanied by Sergeant John Burns, were traveling in an unmarked vehicle in the 400 block of E. North Ave. As the officers headed westbound, they observed JOHNSON, with whom they were familiar from prior investigations, standing on the south side of the street, in front a Rite-Aid Pharmacy. At approximately the same time, the officers observed a gold-colored Cadillac parked in the Rite Aid parking lot. The Rite Aid is located on the southwest corner of the intersection between North Ave. and Greenmount Ave.

9. After observing the gold-colored Cadillac in the Rite Aid parking lot, Detective Fassl contacted an individual who was responsible for monitoring a closed-circuit television (CCTV) camera located at the intersection of Greenmount Ave. and North Ave. Detective Fassl

instructed the individual to notify him immediately if the gold-colored Cadillac moved from its location.

10. At approximately 5:02 p.m., the individual monitoring the CCTV camera contacted Detective Fassl and stated that a tall African-American male with a braided hairstyle had entered the gold-colored Cadillac and was driving the vehicle out of the Rite Aid parking lot. Shortly thereafter, Detective Fassl and his colleagues observed the gold-colored Cadillac, which had a Maryland license plate bearing tag number 1CH9116, traveling southbound in the 1800 block of Greenmount Ave. The officers then saw the Cadillac turn right and begin traveling westbound on the 400 block of E. Lafayette St. As the Cadillac turned onto Lafayette St., Detective Fassl observed JOHNSON, with whom he was familiar from prior investigations, operating the vehicle. At this point in time, Detective Fassl was aware that JOHNSON's driver's license was suspended.

11. At approximately 5:04 p.m., Detective Fassl and his colleagues activated the emergency lights in their vehicle and stopped the gold-colored Cadillac as it turned right onto the 1800 block of Barclay St. When Fassl and his colleagues approached the vehicle, they observed JOHNSON in the driver's seat. In addition to JOHNSON, the officers saw three other individuals, later identified as Zahirah Abdul-Aziz, Ira Garrison, and Devin Currie, in the car. The officers removed all four occupants from the vehicle, and they called for the assistance of a K-9 unit. Approximately 10 minutes later, Detective Peter Iacovo and his K-9, Luke, arrived at the scene. The K-9 performed a scan of the Cadillac, which alerted positive for the presence of narcotics.[1]

---

[1] At approximately the same time, Detective Fassl requested information from his dispatcher regarding the tag number (1CH9116) on the Maryland license plate affixed to the

4

PJM

12. On the basis of the positive K-9 scan, Detectives Fassl and Romeo conducted a search of the gold-colored Cadillac. From the center console area of the vehicle, Detective Fassl recovered two black digital scales (with residue) and one cellular telephone. From a compartment in the driver's side door, Detective Fassl recovered four Ziploc bags (with residue), two clear sandwich bags (with residue), and additional packaging material. From the trunk of the vehicle, Detective Romeo recovered one black latex glove, inside of which he found seven rounds of .45 caliber ammunition.

13. Following the search of the vehicle, Sergeant Burns placed JOHNSON under arrest and advised him of his Miranda rights. During a search conducted incident to arrest, Detective Romeo recovered packaging material and two cellular telephones from the rear left pocket of JOHNSON's shorts. In addition, Sergeant Burns recovered $500 of suspected counterfeit currency from JOHNSON's wallet.

14. Following the search by Detective Romeo and Sergeant Burns, Detective Fassl walked JOHNSON to the rear of a police transport wagon, which by that point had arrived at the scene. Based on his training and experience, and based on the items recovered from JOHNSON's vehicle and person, Detective Fassl suspected that JOHNSON may be concealing additional contraband in his "dip" or waistband area. As discussed previously, investigators had received information from CI-1 indicating that JOHNSON had carried a firearm in his "dip" area on a prior occasion. Based on this information, as well as the prior searches of JOHNSON's vehicle and person, Detective Fassl conducted additional search of Johnson's "dip" area, utilizing the rear of the transport wagon to shield himself and JOHNSON from public view. While searching JOHNSON's waistband, Detective Fassl recovered a gray sock, which he found

---

gold-colored Cadillac. The dispatcher informed Detective Fassl that the license plates bearing this tag number had been reported as stolen by Baltimore County authorities on June 12, 2016.

5

to contain four clear Ziploc bags. Each of the Ziploc bags contained approximately .5 grams of a brown, rock-like substance, which was field-tested by Sergeant Burns. The field test was positive for cocaine.

### III. CONCLUSION

15. Based on the information set forth in this affidavit, I submit that there is probable cause to believe that:

    a. On or about June 30, 2016, JOHNSON knowingly, intentionally and unlawfully possessed with intent distribute a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

Special Lisa A. Christy
Bureau of Alcohol, Tobacco, Firearms,
And Explosives (ATF)

Sworn to before me this __1__ day of July, 2016 at _1324_ hours.

The Honorable A. David Copperthite
United States Magistrate Judge

____ FILED ____ ENTERED
____ LOGGED ____ RECEIVED

JUL 0 1 2016

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                          DEPUTY